UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIANLONG DONG (A-Number: 245-628-534),

Petitioner,

v.

SERGIO ALBARRAN, *et al.*,

Respondents.

Case No. 1:26-cv-5205-DAD-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Jianlong Dong, a citizen of China, entered the United States on December 18, 2023, without inspection and was detained by immigration authorities. These authorities released him into the United States on his own recognizance. On June 24, 2026, ICE re-detained petitioner when he reported to a periodic check-in at their offices in San Francisco. He has been detained since that date without a bond hearing. Proceeding through counsel, petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates his right to procedural due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen of China, entered the United States without inspection on December 18, 2023. ECF No. 7-1 at 5-6. Immigration authorities detained him briefly and then released him into the United States the next day on an order of recognizance. *Id.* at 8. They determined

that petitioner "[did] not appear to be a threat to national security, border security, or public safety." *Id.* Petitioner applied for asylum and other forms of humanitarian relief based on his claim of religious persecution. ECF No. 1 at 4-14; ECF No. 7-1 at 4.

On August 30, 2024, petitioner was charged with driving under the influence of alcohol. ECF No. 1-2 at 21-22. On March 19, 2025, petitioner pled no contest to a "wet reckless" in that case and received credit for time served and court probation.[1] ECF No. 1-2 at 24-25. On March 28, 2026, petitioner was again cited for driving under the influence. *Id.* at 42; ECF No. 7-1 at 17-18. There is no evidence in the record that charges have been filed.

Immigration officers re-detained petitioner on June 24, 2026, when he reported to a scheduled check-in at the ICE office in San Francisco. ECF No. 7-1 at 3. They notified him that they were re-detaining him due to his "criminal history." *Id.* There is no evidence or argument that petitioner committed any other violations of his release. Petitioner has been detained since that day without a bond hearing. ECF No. 1 at 3.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

[1] A "wet reckless" is a plea to reckless driving in violation of California Vehicle Code section 23103.5(a), pursuant to a plea agreement involving an initial charge of driving under the influence. *Hendon v. Cal. State Senate*, No. 21-cv-0505-RSH-MDD, 2023 WL 2620147, at *3 n.1 (S.D. Cal. March 23, 2023).

**Analysis**

Petitioner claims that his re-detention without individualized consideration of whether he poses a flight risk or a danger violates the Due Process Clause.[2] ECF No. 1 at 11. Respondents appear to argue that they are mandatorily detaining petitioner under 8 U.S.C. § 1225(b) as an applicant for admission. ECF No. 7 at 4. Although respondents advance that ground for detention—which has been consistently rejected by courts in this District, *see, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025)—they focus their answer on convincing the court to order a bond hearing under section 1226(a). *See* ECF No. 7 at 2-3. In doing so, respondents acknowledge that the court will analyze this procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Id.* at 3. In fact, respondents concede that petitioner has a "private interest in freedom from restraint" that is "substantial" under *Mathews*. *Id.*

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).

Petitioner is no different. He was released into the United States on an order of

---

[2] As I recommend that the petition be granted on this ground, I do not address petitioner's other claims. *See* ECF No. 1 at 8-10, 11-15.

recognizance in December 2023. ECF No. 7-1 at 8. Petitioner remained out of immigration custody until June 24, 2026, when he reported to the ICE office in San Francisco for a check-in. *Id.* at 3. There are no allegations that he violated any of the terms of his own recognizance release. During that time, petitioner applied for asylum, a petition that is still pending. ECF No. 1-2 at 4.

I agree with respondent, ECF No. 7 at 3, that petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. As respondents acknowledge, ECF No. 7 at 3, this requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, as conceded by respondent, petitioner has a significant private interest in his

continued release. ECF No. 7 at 3. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release over more than two years of release on his own recognizance in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondents necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). The ICE officer who issued petitioner an order of recognizance noted that he "[did] not appear to be a threat to national security, border security, or public safety." ECF No. 7-1 at 8. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent

erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention and has denied him a bond hearing, while also claiming that the court should grant petitioner "an individualized bond hearing before an IJ," ECF No. 7 at 2, indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Here again, respondents agree that a bond hearing would allow an immigration judge to "quickly resolve" the issues but has refused to prove one. ECF No. 7 at 3. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents' filing demonstrates that it would not bear any additional burden as a result of being required to provide a bond hearing. *See* ECF No. 7 at 3. In fact, respondents' answer focuses on convincing the court to order a bond hearing rather than immediate release. *Id*.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 15. As noted above, respondents argue that the court should order a bond hearing. *See* ECF No. 7.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v.*

*Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, respondents do not explain in what way there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. As noted, there is no evidence that petitioner has violated the terms of his release, except for the wet reckless misdemeanor he sustained in 2025 and the DUI arrest in March 2026. Respondents failed to hold a pre-deprivation hearing after either of those incidents, and petitioner continued on his own-recognizance release. Months after the second citation, ICE had petitioner report to its office, where officers detained him. Despite respondents' arguments regarding the importance of agency decision-making in this case, petitioner has not been granted a bond hearing, even after he filed his petition for writ of habeas corpus on July 6, 2026. *See* ECF No. 1. More to the point, respondents do not explain why they were unable to provide petitioner a pre-deprivation hearing before his re-detention, when they had ample time to do so.

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing, and has failed to provide a prompt post-deprivation hearing to date, despite its claim that such a hearing strikes the proper constitutional balance. *See* ECF No. 7 at 3. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

Accordingly, I recommend that petitioner be released.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 245-628-534) from their custody on the same conditions as his prior release. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: July 27, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE